FILED

2010 Jun-23  PM 01:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GREGORY C. WHITE,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 09-BE-1630-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On June 29, 2005, the Claimant, Gregory Charles White, protectively filed a claim for a period of Disability, Disability Insurance Benefits, and Supplemental Security Income. (R. 46-49.) The Claimant alleges disability commencing on December 5, 2003, because of a cerebral vascular accident (CVA), hypertension, pulmonary hypertension, hyperlipidemia, chronic obstructive pulmonary disease (COPD), coronary artery disease and a valve replacement, and depression. (R. 46, 63.) On November 18, 2005, the Commissioner denied the claim initially. (R. 26.) The Claimant filed a request for a hearing before an Administrative Law Judge on February 2, 2006, (R. 33), and the ALJ held a hearing on February 27, 2008 (R. 36). In a decision dated May 22, 2008, the ALJ found that the Claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for a period of disability, disability insurance benefits, and supplemental security income. (R. 24.) On July 8, 2008, the Claimant requested that the Appeals Council review the hearing decision. (R. 12-13.) On June 17, 2009, the Appeals Council denied the Claimant's request for

review. (R. 4-6.) Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. The Claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

The issue is whether the ALJ's finding of a residual functional capacity (RFC) for light work was in error as a result of the ALJ's rejection of the opinion of a non-treating consultive examiner in favor of the opinion a reviewing but non-examining source.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. 405(g) (2006) (amended 2010); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, "[n]o similar presumption of validity attached to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)).

"Substantial evidence" is "'more than a scintilla.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'It means such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Id.* "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc). Further,

"findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.* Yet, "[a] reviewing court may not look 'only to those parts of the record which support the ALJ,' but instead 'must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.'" *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983)); s*ee also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To make this determination the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920 (2010).

3

The Eleventh Circuit has establishes rules regarding the weight to be accorded to opinions based on a examination of the claimant as opposed to a review of the claimant's records. "The opinions of non-examining, reviewing physicians . . . when contrary to those of examining physicians are entitled to little weight." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987); *see also Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); 20 C.F.R. 404.1527(d)(3), 416. 927(d)(3) (2010). As a general rule, "[t]he reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb*, 847 F.2d at 703; *see also Sharfarz*, 825 F.2d at 280; *Spencer ex rel. Spencer*, 765 F.2d at 1094.

However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz,* 825 F.2d at 280. Similarly, in the context of discrediting the opinion of a *treating* physician, the Eleventh Circuit "has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Moreover, "although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence." *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (quoting 20 C.F.R. §§ 404.1527 (1986)); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (2010).

### V. FACTS

The Claimant was forty-four years old at the time of the administrative hearing. (R. 171.)

He graduated from high school and vocational school and is an ASC certified mechanic. (R. 174.) His principal and most recent employment was with an automobile repair shop that fixed cylinder heads, where he served as manager; he also worked as a marble cutter and finisher for a short time during 2003. (R. 171-72, 192.) The Claimant alleged that he was unable to work as of December 5, 2003, because of a CVA, hypertension, pulmonary hypertension, COPD, coronary artery disease and a valve replacement, and depression. (R. 46, 63.) At his hearing, the Claimant also asserted that he was limited by his diabetes (R. 184), inability to balance because of numbness in his left leg and inability to grip because of numbness in both his hands (R. 176), pain in his right ankle (R. 180), fatigue (R. 179), and memory loss (R. 181).

*Records of Treatment*

On June 10, 2005, the Claimant was discharged from the hospital after his cerebrovascular accident with "good strength" and a "satisfactory recovery." The discharge summary also notes that the Claimant's most prominent deficit was a left facial drop. (R. 101.)

Dr. John Eagan, the Claimant's treating physician, diagnosed the Claimant with status post cerebrovascular accident; coronary artery disease, status post aortic valve replacement, and coronary artery bypass grafting; chronic obstructive pulmonary disease; hyperlipidemia; and hypertension. (R. 127-152.)  Dr. Eagan noted the Claimant's history of poor compliance in taking his medications as prescribed (R. 128-34, 136), due in part to difficulty affording the medication (R. 132-35). Dr. Eagan also noted that the Claimant had no complaints of chest pain or shortness of breath (R. 128-30,134, 136.)

*The State Agency's Opinion*

On November 16, 2005, Mr. David Williamson, as a Single Decision Maker on behalf of

5

the State Agency, completed a Physical Residual Function Capacity Assessment form. (R. 114-21.) He noted that the Claimant: could occasionally lift and carry up to 20 pounds and frequently lift and carry 10 pounds (R. 115); could either sit or stand and walk for 6 hours in an 8-hour workday (*id.*); and could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, and scaffolds (R. 116). Mr. Williamson did not find any limitations on the Claimant's manipulative abilities, vision, or communication abilities. (R. 117-18.) With respect to environmental limitations, Mr. Williamson noted that the Claimant could be subject to unlimited moisture, noise, and vibration but needed to avoid concentrated exposure to extreme heat and cold, humidity, and fumes etc. and needed to avoid all exposure to hazards such as machines and heights. (R. 118.) Finally, he opined that the medical evidence was sufficient to show "potentially limit[ed] function[ality] . . .  equal to light range [of] work," but that "the evidence did not support a condition so severe" that the Claimant could "meet listing level requirements" because "no credibility [could] be established." (R. 119.)

*Consultive Examiner Dr. Settle*

On October 22, 2007, Dr. Harold P. Settle, a cardiologist, conducted a consultative examination of the Claimant at the request of the Social Security Administration. (R. 122-26.) On physical examination, Dr. Settle reported that Claimant's chest was clear to percussion and auscultation, that prosthetic aortic valve sounds were crisp and clear, and that no murmurs or gallops were present. Evaluation of Claimant's upper extremity strength revealed good grip strength in his hands and bilateral arm muscles. Dr. Settle reported that Claimant's gait was normal with good leg strength. Dr. Settle noted that the Claimant had documented coronary artery disease and aortic valve replacement, but also noted that no resent objective evidence of

limitations could be found. (R. 123.)

Dr. Settle provided an opinion regarding the Claimant's residual functional capacity. At the outset of his evaluation, Dr. Settle noted that his opinion was based on an interview and a review of the Claimant's records. (R. 122.) Dr. Settle opined that the Claimant could "only perform light sedentary activities, though he [was] not having any recent problems with chest pain or congestive heart failure." (R. 123.) Dr. Settle indicated that the Claimant's ability to walk was limited to no more than 10 to 20 minutes at one time and ability to lift and carry was limited to an occasional 5 to 10 pounds. (R. 124.) Further, he noted that the Claimant could only occasionally perform such functions as climbing, stooping, kneeling, crouching, crawling, handling, fingering, and reaching overhead, but also noted that the Claimant would never be able to balance. (R. 125.)  Finally, Dr. Settle stated that the Claimant could never work under extremely cold or hot conditions nor at places with high exposures, but could occasionally work in environments characterized by humidity, vibrations, exposure to fumes and dust, proximity to moving mechanical parts, and the possibility of driving automotive equipment. (R. 126.)

*The Claimant's Testimony*

With respect to physical limitations, the Claimant testified that he could not control the movement of his left hand and that his left leg does not function correctly, thus affecting his balance and causing him to either stumble or fall. As a result, he could not stand up for more than about 10 minutes at a time. (R. 176.) Further, the Claimant testified to continuous pain in his right ankle beginning a year before the hearing. (R. 180.) Although the Claimant was able to pick up a 10 to 15 pound item, he testified that he could not do so regularly because of numbness in his hands and fatigue. (R. 183.) The Claimant opined that he could not sit for a day in a

7

comfortable chair and perform work using either hand or foot controls. (R. 183.) Finally, the Claimant also testified that he had chest pains two or three time a week and shortness of breadth continuously ever since his heart surgery in 1999. (R. 189-90.)

The Claimant also identified severe fatigue as a limitation.  He left his mechanic's job because of fatigue. (R. 173.)  Furthermore, fatigue caused him to stay in his house for about five or six days a month. (R. 179.) He was unable to complete household chores such as vacuuming because his fatigue set in "too quick." Further, the Claimant did not sleep well at nights and took hour long naps in the afternoon. (R. 180.) When asked what causes his fatigue, the Claimant said it was triggered by "[a]nything physical." (R. 179.) In the employment context, the Claimant testified that he could not work throughout a day without lying down to rest. (R. 183).

With respect to mental capacity, the Claimant testified to memory problems in the wake of his strokes, even regarding simple tasks. Yet, he could read and write well (R. 181.) and did not have any problem paying attention to TV shows (R. 185).

The Claimant's testimony also related to his financial circumstances. He had neither any source of medical insurance nor any income. (R. 180.) Thus, six months prior to the hearing his doctors changed his prescription to a generic medication that he could afford. (R. 184.)

*Vocational Expert's Testimony*

The ALJ's first hypothetical question assumed a person of the Claimant's age, education, and work experience, whose employment opportunities was restricted by various environmental limitations. This hypothetical person could: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and walk for six hours in a day or sit for six hours in a day; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and frequently

grasp, handle, and do fine manipulation bilaterally. In response the Vocational Expert, Dr. Jullia Russell, identified unskilled light jobs that the Claimant could perform, such as a cashier, a sorter, and an assembler. (R. 192-93.) In another hypothetical question that assumed a person limited to sedentary work that could lift 5 pounds frequently and 10 pounds occasionally, the VE identified several unskilled sedentary jobs that the Claimant could perform such as a security monitor, a bench worker, and a food assembler (R. 193.)  However, when asked a hypothetical about a person who either could not work 40 hours a week or needed to take unscheduled one hour breaks, the VE testified that the foregoing jobs would be precluded "regardless of skill or exertional level." (R. 194-95.)

### The ALJ's Decision

As an initial matter, the ALJ determined that the Claimant was an insured individual. In the first step of the five step process, the ALJ found that the Claimant had not been engaged in a substantial gainful activity since December 5, 2003. In step two, the AJL found that the Claimant was limited by several impairments, which were found to be severe. In step three, the ALJ found that the Claimant did not have any impairment that meets or equals those contained in the Listings of Impairments, even when considered in combination. (R. 19.)

Before evaluating steps four and five, the ALJ addressed the Claimant's RFC.  He determined that the Claimant had a RFC to perform "light work." The ALJ used a two-part test in reaching this determination. First, the ALJ looked to whether an underlying medically determinable physical or mental impairment existed that could reasonably be expected to produce the Claimant's pain or other symptoms. (R. 20.) The ALJ found, without explanation, that the Claimant's "medically determinable impairments" were sufficient. (R. 21.) Second, the ALJ

evaluated the intensity, persistence, and limiting effects of the Claimant's symptoms to determine the extent to which they limit the Claimant's ability to do basic work activities. (R. 20.) The ALJ, however, found that "the Claimant's statements concerning [his] symptoms are not credible to the extent they are inconsistent with residual functional capacity assessments."  (R. 21.)

In discrediting the Claimant's testimony, the ALJ gave "controlling weight" to Dr. Egan's records, because he was the treating physician. Specifically, the ALJ looked to records that document the Claimant's lack of chest pains and shortness of breadth as well as non-compliance with medical instructions. (R. 21.) Further, the Claimant was discharged from the hospital in 2005 with "good strength" and had a "satisfactory recovery" after his cerebrovascular accident. (R. 21.) Notably, the ALJ gave "no weight" to Dr. Settle's opinions because he was a "nontreating consultive examiner" who "only examined the Claimant one time" and because his opinions were "not supported by diagnostic and clinical findings and inconsistent with the record." The ALJ noted that Dr. Settle opined that the Claimant had "a normal gait with good leg strength and good grip in his hands and bilateral arm muscles" as well as "grossly normal" dexterity. (R. 22.) On the other hand, the ALJ "considered" and found "persuasive" the State Agency's opinion that the Claimant could perform light work, even though the Claimant was not examined by the Agency, because the opinions were "grounded in the evidence." In conclusion, the ALJ "reduced" the Claimant's RFC to light work "to compensate for the Claimant's impairments and associated symptoms that were medically determined." (*Id.*)

In step four, the ALJ determined that the Claimant was "unable to perform any past

relevant work" because "the exertional demands exceed[ed] his [RFC] for medium work."[1] (R. 22-23.)  In step five, by considering "the Claimant's age, education, work experience, and residual functional capacity" as well as the Claimant's impediments, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the Claimant can perform." (R. 23.) Therefore, the ALJ concluded that the Claimant was not disabled as defined by the Social Security Act from December 5, 2003, through May 22, 2008. (R. 24.)

## VI. DISCUSSION

The Claimant raises only one argument before this court: that the ALJ's finding of a RFC for light work was in error. Specifically, the Claimant asserts that the ALJ erroneously rejected the opinion of Dr. Settle, a non-treating consultive examiner, in favor of the opinion of Mr. Williamson of the State Agency, a reviewing but non-examining source.

This court need not decide the specific issue of whose opinion regarding the Claimant's RFC is entitled to more weight because its determination would have no effect on the outcome of the case. Assuming *arguendo* that the ALJ should have accepted Dr. Settle's opinion, substantial evidence would still support the ALJ's conclusion that the Claimant was not disabled. Dr. Settle's opinion did not find the Claimant incapable of working, but found the Claimant could perform only "light sedentary activities." The VE testified that a person of the Claimant's age, education, work experience, and limitations regarding work environment, who is only able to perform at the sedentary exertional level, would be able to find work. Specifically, the VE testified that this person could be employable as a bench worker, security monitor, or food

---

[1]The ALJ explicitly found in paragraph 5 of his decision that the Claimant had a RFC for "light work." (R. 20). In this context the ALJ refers to an RFC for "medium work" (R. 23), presumably in error. Neither party before this court has raised the discrepancy.

11

assembler. (R. 192-93.) Hence, this court finds that substantial evidence supports the ALJ's

conclusion that the Claimant was not disabled from December 5, 2003, and May 22, 2008,

regardless of whether he accepted or rejected Dr. Settle's opinion.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is

supported by substantial evidence and is due to be AFFIRMED. A separate order will be entered

in accordance with this Memorandum Opinion.

DONE and ORDERED this 23rd day of June 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE